IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

BENERTHA SPENCER,           *
                            *
        Plaintiff,          *
                            *
    v.                      *    CV 114-132
                            *
UNITED STATES OF AMERICA, OTIS *
ELEVATOR COMPANY, and BAYLINE  *
LIFT TECHNOLOGIES, LLC,        *
                            *
        Defendants.         *

O R D E R

This matter is now before the Court on the United States' Motion to Dismiss. (Doc. 20.) Plaintiff Benertha Spencer claims she suffered injuries when an elevator malfunctioned at the Veterans Affairs ("VA") Medical Center in Augusta, Georgia. She brings this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq., alleging negligence on the part of the United States due to the VA's failure to exercise the required level of care to keep its premises safe and its delegation of a non-delegable duty. (Compl., Doc. 1, ¶ 9.)

On August 22, 2014, the United States filed the instant motion to dismiss averring that Ms. Spencer's FTCA claim falls within the discretionary function exception to the FTCA's waiver of the United States' sovereign immunity. (U.S. Br., Doc. 20, at 1, 6-18.) Apart from this jurisdictional issue, the United

1

States further asserts, pursuant to Federal Rule of Civil Procedure 12(b)(6), that Ms. Spencer has not stated a plausible claim on which the Court could grant relief because she does not allege "basic facts" implicating any United States employee in negligent conduct. (Id. at 18.) Upon emergency motion, the Court granted Ms. Spencer a 60-day extension to respond to the United States' motion and to depose three individuals so as to investigate "possible active negligence" by a United States employee revealed during discovery. (Docs. 23, 27.) The 60-day extension has expired, and Ms. Spencer — who is represented by counsel — has not responded to the United States' motion. Thus, pursuant to the Local Rules, the Court deems it unopposed. L.R. 7.5, SDGa. ("Failure to respond within the applicable time period shall indicate that there is no opposition to a motion.")

The Eleventh Circuit has noted that a district court may dismiss a case when a party, represented by counsel — as in the instant case — fails to file a response to a motion to dismiss. See Magluta v. Samples, 162 F.3d 662, 664-65 (11th Cir. 1998) (citing LR 7.1(B), NDGa); see also Sampson v. Fulton Cnty. Jail, 157 F. App'x 242, 243 (11th Cir. 2005) (discussing the scope of Magluta); Benjamin v. Am. Airlines, Inc., No. CV 213-150, 2014 WL 3365995, at *6 n.9 (S.D. Ga. July 9, 2014). Such a dismissal is, however, within the discretion of the district court. Magluta, 162 F.3d at 664-65. At the same time, "there is a

strong policy of determining cases on their merits" in this Circuit. In re Worldwide Web Sys., Inc., 328 F.3d 1291, 1295 (11th Cir. 2003). Thus, despite Ms. Spencer's failure to defend her claims, the Court will assess the FTCA on the merits.

## I. BACKGROUND

On June 17, 2014, Plaintiff filed suit against the United States, Otis Elevator Company ("Otis"), and Bayline Lift Technologies, LLC ("Bayline") as joint tortfeasors responsible for her injuries when she fell in an elevator at the VA Medical Center that malfunctioned and came to "an abrupt stop." (Compl. at ¶¶ 7, 8.) Plaintiff alleges that the United States was negligent in (1) "failing to exercise ordinary care in keeping their premises safe" as required by Georgia statute; (2) "failing to exercise extraordinary care and diligence regarding the use of elevators" as required by Georgia statute; (3) "delegating [its] non-delegable duty to exercise extraordinary care and diligence regarding the use of elevators;" (4) "failing to maintain the property and in allowing the property to become unsafe;" and (5) otherwise acting negligently. (Id. ¶ 9.)

The United States and Otis entered into a contract for the maintenance and repair of the elevators located at the Augusta VA Medical Center in September 2011. (Doc. 20, Ex. A ("Otis VA Contract"), at 1, 5 § B.1.1.) The Otis VA Contract mandated

that Otis maintain control over the manner and method in which the work was conducted and assume the primary responsibility for performance:

> B.1.7. MANAGEMENT. The Contractor shall manage the total work effort associated with the operations, maintenance, repair, and all other services required herein to assure fully adequate and timely completion of these services. Included in this function is a full range of management duties including, but not limited to scheduling, report preparation, establishing and maintaining records, and quality control. The Contractor shall provide and [sic] adequate staff of personnel with the necessary management expertise to assure the performance of the work in accordance with sound and efficient management practices.
>
> B.1.7.1. Work Control. The Contractor shall implement all necessary work control procedures to ensure timely accomplishment of work requirements, as well as to permit tracking of work in progress. The Contractor shall plan and schedule work to assure material, labor, and equipment are available to complete work requirements within the specified time limits and in conformance with the quality standards established herein. Verbal scheduling and status reports shall be provided when requested by the COTR, and followed-up with written documentation.

(Otis VA Contract at 8 §§ B.1.7, B.1.7.1.) The incorporated quality standard set forth that Otis would deliver "[c]ontinuous progress and completion of the work resulting in a safe, efficient, and reliable system condition that permits the restoration of system service" and maintain a "[s]afe job site during progress of work." (Id. at 12 §§ B.1.10.d(3) & (4).) The exercise of control over Otis by the United States is limited to enforcing the terms of the contract. (Id. at 10

4

§ B.1.8.4, 13 § B.1.12.) Furthermore, the contract required Otis to "provide all certified technical labor, . . . transportation, equipment, materials, tools, supplies, supervision, incidental engineering, and management required to perform the testing, maintenance, repair, and component replacement as required to maintain [the] elevator[s]." (Id. at 8 § B.1.2.)

To review the quality of the maintenance services provided by Otis, in January 2012, the United States also entered into a contract with Bayline Lift Technologies, LLC. (Doc. 20, Ex. C ("Bayline VA Contract"), at 1.) The contract places the obligation of taking proper safety precautions upon Bayline. (Id. at § B.1.5.) Similarly, the Bayline VA Contract states that the "Contractor shall furnish all equipment, travel, labor, and supplies to provide elevator inspection services located at the Charlie Norwood VA Medical Center in Augusta, GA." (Id. § B.1; see also § A.3.)

## II. LEGAL STANDARD

The United States government may not be sued without its consent, and this immunity extends to federal government agencies. Rodriguez v. United States, 415 F. App'x 143, 145 (11th Cir. 2011) (citing Asociacion de Empleados del Area Canalera (ASEDAC) v. Panama Canal Comm'n, 453 F.3d 1309, 1315

5

(11th Cir. 2006)). Under the FTCA, the United States waives its sovereign immunity for injuries caused by the "negligent or wrongful act or omission" of a federal government employee while that employee is "acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Several exceptions in 28 U.S.C. § 2680 limit the FTCA's waiver, and where an exception applies, sovereign immunity remains a jurisdictional bar to suit. The discretionary function exception is one such exception. See 28 U.S.C. § 2680(a). When the discretionary function exception to the FTCA applies, no federal subject matter jurisdiction exists. United States Aviation Underwriters, Inc. v. United States, 562 F.3d 1297, 1299 (11th Cir. 2009). And "[i]n deciding whether subject matter jurisdiction exists, [the Court] may consider the pleadings and matters outside the pleadings, such as testimony and affidavits, to satisfy [itself] as to [its] power to hear the case."[1] Rodriguez, 415 F. App'x at 145 (citing McMaster v. United States, 177 F.3d 936, 940 (11th Cir. 1999)).

---

[1] Challenges to subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) can be either facial or factual. McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1251 (11th Cir. 2007). In a facial attack, the court evaluates whether the plaintiff "has sufficiently alleged a basis of subject matter jurisdiction" in the complaint and employs standards similar to those governing Rule 12(b)(6) review. Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1335 (11th Cir. 2013). A factual attack, however, "challenge[s] the existence of subject matter jurisdiction in fact,

6

The Supreme Court has fashioned a two-step test for determining whether the discretionary function exception applies to re-erect sovereign immunity as a bar to an FTCA negligence suit. United States v. Gaubert, 499 U.S. 315, 322 (1991); Autery v. United States, 992 F.2d 1523, 1526 (11th Cir. 1993). First, a court must look to the nature of the challenged conduct and decide whether the conduct "violated a mandatory regulation or policy that allowed no judgment or choice." O'Ferrell v. United States, 253 F.3d 1257, 1266 (11th Cir. 2001) (citing Autery, 992 F.2d at 1526). The discretionary function exception will not apply "if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." Gaubert, 499 U.S. at 322. The second step asks whether the judgment at issue "is of the kind that the discretionary function exception was designed to shield." Id. at 322-23 (citation and internal quotation marks omitted). The exception exists "to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy." Id. at 323 (citation and internal quotation marks omitted).

---

irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990) (citation and internal quotation marks omitted). When the attack is factual, as is the case here, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id.

Put simply, the court "first must identify the conduct that is alleged to have caused the harm, then determine whether the conduct can fairly be described as discretionary, and if so, decide whether the exercise or non-exercise of the granted discretion is actually or potentially influenced by policy considerations." Moore v. United States, No. 1:13-cv-301-WSD, 2014 WL 949985, at *3 (N.D. Ga. Mar. 11, 2014) (quoting Carroll v. United States, 661 F.3d 87, 100 (1st Cir. 2011)). "If the challenged conduct is both discretionary and policy-based, there is no subject matter jurisdiction for the claim." Id.

## III. ANALYSIS

Ms. Spencer makes only one specific allegation of negligence: that the United States was negligent "in delegating their non-delegable duty" to an independent contractor. (Compl. ¶ 9.) She also alleges generally that the United States acted negligently in (1) "failing to exercise ordinary care in keeping their premises safe;" (2) "failing to exercise extraordinary care and diligence regarding the use of elevators;" and (3) "failing to maintain the property and in allowing the property to become unsafe." (Id.) Construing these latter "incidents" of negligence broadly in light of Ms. Spencer's own failure to identify any specific act or omission by any government employee, it appears that the only other plausible claim is for

8

the United States' negligent failure to supervise. Under this theory, it follows that the United States failed to ensure that the independent contractors who actually performed the elevator maintenance, repair, and inspection exercised the appropriate care in keeping the elevators in safe operating condition.

A.  **Liability for Delegation of a Non-delegable Duty**

The United States exercised its discretion to carry out its responsibilities for maintaining the elevators at the VA Medical Center by contracting with Otis and Bayline. "[T]he law is clear that the government may delegate its safety responsibilities to independent contractors in the absence of federal laws or policies restricting it from doing so." Andrews v. United States, 121 F.3d 1430, 1440-41 (11th Cir. 1997)(citations omitted); Moore, 2014 WL 949985, at *5 (citing Cochran v. United States, 38 F. Supp. 2d, 986, 992-93 (N.D. Fla. 1998); see also Feyers v. United States, 749 F.2d 1222 (6th Cir. 1984) (holding the government was entitled to delegate responsibility for safety of rail yard workers to their private employers); Dingler v. United States, No. 1:06-cv-171, 2008 WL 4065642, at *3 (D. Vt. Aug. 26, 2008) ("[T]he [discretionary function exception] of the FTCA bars [a] [p]laintiff from maintaining a claim based on the GSA's decision to delegate responsibility for maintaining the elevators at the Federal

9

Building; the United States has not waived its sovereign immunity from such claims."); Talkington v. Gen. Elevator Co., Inc., 967 F. Supp. 890, 894 (N.D. W. Va. 1997) (finding the government immune from liability for accident sustained in elevator of federal building where government contracted with private company to provide elevator maintenance); Hall v. United States, 825 F. Supp. 427 (D.N.H. 1993) (same); Ellis v. United States, 780 F. Supp. 783, 787 (D. Utah 1991) ("It is also well established that the decision to assign safety responsibility to a contractor cannot form the basis for tort liability against the government.").

This is so even when there is an applicable non-delegable duty under state law. See Andrews, 121 F.3d at 1438-40, 1442 (finding, in spite of the government's non-delegable duty to monitor the activities of independent contractors hired to dispose of hazardous waste under Florida law, that the Navy was free to delegate its safety responsibilities in the absence of federal legislation dictating otherwise); but see Dickerson, Inc. v. United States, 875 F.2d 1577, 1582-84 (11th Cir. 1989).[2]

---

[2] In Dickerson, the Eleventh Circuit adopted the Fifth Circuit's rule in Emelwon, Inc. v. United States, 392 F.2d 9, 10-13 (5th Cir. 1968), which held that a governmental agency *may* be liable to third parties for its own negligence in discharging a non-delegable duty imposed under state tort law, for example, "when the activity contracted for was inherently dangerous or when the Government was aware that the contractor had created a dangerous situation." Dickerson, Inc. v. United States, 875 F.2d 1577, 1582-83 (11th Cir. 1989). Dickerson is inapposite here, however, because as previously noted, Ms. Spencer alleges no facts identifying any acts, omissions, or knowledge on the part of any government employee. Moreover, Ms. Spencer

See also Berrien v. United States, 711 F.3d 654, 659 (6th Cir. 2013) (holding the FTCA exemption of liability for independent contractors preempts state law where it imposes non-delegable duties); accord Alinsky v. United States, 415 F.3d 639, 645 (7th Cir. 2005); Roditis v. United States, 122 F.3d 108, 111 (2d Cir. 1997); Norman v. United States, 111 F.3d 356, 358 (3d Cir. 1997); Hall, 825 F. Supp. at 433 (noting the First Circuit has not recognized state law tort duties as limitations on the United States' discretion under the FTCA); Berkman v. United States, 957 F.2d 108, 113 (4th Cir. 1992).

Moreover, the VA's decision to delegate elevator maintenance and repair is grounded in policy concerns. (Downs Aff., Doc. 20-5, ¶ 2 (identifying "the relative complexity of [the] elevator maintenance and repair services required, the available skill levels of personnel employed by the Government, the expertise of the selected independent contractor, costs, safety, and efficiency" as factors weighed in the government's decision to delegate elevator safety responsibilities).

Both prongs of the Supreme Court's test for determining applicability of the discretionary function exception are satisfied. The exception thus shields the government from tort liability for consequences flowing from the VA's decision to delegate elevator maintenance to Otis and Bayline.

---

provides no law to suggest that elevator *maintenance* or minor elevator repair is an "inherently dangerous activity" under Georgia law.

B. **Liability for Negligent Failure to Supervise**

The United States also exercised its discretion in determining the appropriate level of supervision over Otis and Bayline, and thus is not liable as a matter of law. "The discretionary function exception encompasses government decisions about how and how much to supervise the safety procedures of independent contractors." Andrews, 121 F.3d at 1440 (citing United States v. Varig Airlines, 467 U.S. 797, 819-20 (1984) (holding that the extent of government supervision is a discretionary function "of the most basic kind") and Johns v. Pettibone Corp., 843 F.2d 464, 467 (11th Cir. 1988) ("Safety decisions represent an exercise of discretion giving rise to governmental immunity.")(citations omitted)). The government may lose the protection of the exception if, having delegated responsibility, it "has also retained and exercised control over the project's safety." Id. at 1441 (quoting Duff v. United States, 999 F.2d 1280, 1282 (8th Cir. 1993) and citing Phillips v. United States, 956 F.2d 1071, 1076-77 (11th Cir. 1992)).

That is not the case here. Based on the contracts between the parties, Otis and Bayline retained exclusive control over all matters with regard to the safety, maintenance, inspection, and operation of the elevators. (U.S. Br. at 10-11.) In failing to respond, Ms. Spencer does not dispute this. See LR 7.5, SDGa. The only supervisory authority the VA retained

12

appears to be administrative in nature: requiring, for example, that inspection and completion reports be filed within a certain period, that contracting officer's technical representative be present during inspections, that the job site be clean, and that contractors check in upon arrival at the worksite.

Again, the United States — through the VA — weighed numerous policy factors in deciding the extent and manner of its review over Otis and Bayline. (Downs Aff. ¶ 10 (identifying "the relative complexity of [the] elevator maintenance and repair services required, the available skill levels of personnel employed by the Government, the expertise of the selected independent contractor, costs, safety, and efficiency" as factors the government considered in making its decision to supervise and inspect the work of Otis and Bayline).)

As Ms. Spencer has failed to identify any mandatory directive that outlines the manner in which the United States was to conduct its actions in relation to its limited oversight function of Otis's and Bayline's actions, the Court finds that United States acted within the province of its discretion. And in deciding how to supervise Otis's and Bayline's performance under the contract, the United States relied on policy-based analysis. Accordingly, there is no subject matter jurisdiction for the failure to supervise claim.

## IV. CONCLUSION

After due consideration, the Court finds that the United States has not waived its sovereign immunity under the FTCA. Consequently, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and for the reasons set forth above,[3] the Court **GRANTS** the United States' Motion to Dismiss (Doc. 20) and **ORDERS** the claim against the United States **DISMISSED WITH PREJUDICE** for lack of subject matter jurisdiction. The Clerk **SHALL TERMINATE** the United States as a defendant and all deadlines and motions pertaining to it.

**ORDER ENTERED** at Augusta, Georgia, this 26th day of November, 2014.

```
_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA
```

---

[3] As the Court finds Ms. Spencer's negligence claims against the United States are barred on immunity grounds, it will not address the United States' alternative ground for dismissal.