IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

```
BENERTHA SPENCER,                 *
                                  *
     Plaintiff,                   *
                                  *
v.                                *
                                  *    CV 114-132
OTIS ELEVATOR COMPANY and         *
BAYLINE LIFT TECHNOLOGIES,        *
                                  *
     Defendants.                  *
                                  *
                                  *
```

## ORDER

Plaintiff, Benertha Spencer, was injured while riding an elevator in the Augusta VA Medical Center. Defendants, Otis Elevator Company and Bayline Lift Technologies, were responsible for the maintenance of the Augusta VA Medical Center elevators. Specifically, Otis Elevator performed the day-to-day physical maintenance of the elevators and Bayline Lift Technologies served as a third-party inspector of Otis's annual and semiannual safety inspections. After her injury, Plaintiff sued Defendants, as well as the United States of America, alleging that their negligent maintenance caused Plaintiff's injuries. The Court dismissed the claims against the United States in a previous order. The remaining Defendants have moved for summary judgment on the grounds that Plaintiff failed to produce

sufficient evidence to prove her claim. Defendants' motions are **GRANTED**.

## I. BACKGROUND

On May 7, 2012, Plaintiff entered the first floor of the Augusta VA Medical Center and took an elevator to the VAH Credit Union located on the third floor. (Doc. 74 ("Spencer Dep.") at 35:17-25.) On her return to the first floor, the elevator Plaintiff was riding in malfunctioned and stopped between floors. (Doc 81-1 at 30.) When maintenance technicians returned the car to the second floor, hospital personnel found Plaintiff on the floor of the elevator and escorted her to the emergency room. (Spencer Dep. at 43-45; Doc. 94 ("Williamson Dep.") at 13:7-14.) Plaintiff, the only passenger in the elevator, claims that the elevator caused her to fall by dropping suddenly and abruptly. (Spencer Dep. at 41:20-21, 38:3-16.) As a result of her fall, she suffered a dislocated knee, a torn ACL, and a torn PCL — injuries which required surgery and rehabilitation. (Spencer Dep. at 50:1-2.)

Elevators operate by sending and receiving electrical signals from a central controller to individual elevator cars. (Doc. 74-2 ("Walker Dep.") at 18-24.) These signals control the movement of the car by, among other things, disengaging the brakes of the car. (Id. at 22-23.) Unlike an automobile, which must affirmatively use brakes to stop, an elevator must

2

affirmatively release the brakes to move. (Id.) Disengaging the brakes requires a certain amount of voltage to travel from the controller through a relay to the car in order to lift or "pick" the brakes from their resting position. (Id.) If the voltage drops below the amount needed to keep the brakes fully lifted, the car will not travel at its proper speed, a microprocessor in the controller will recognize a problem, and the brakes will re-engage to stop the car within a predetermined distance set by the manufacturer. (Id. at 38-40; Doc. 74-3 ("McCray Dep.") at 40.)

On the date of the accident, Otis technician Tim McCray inspected the elevator. Mr. McCray determined that the elevator malfunctioned because a contact point on the relay located in the controller had collected dust. (Id. at 25.) The dust on the contact prevented the electrical circuit necessary for picking the brakes from fully closing. (Id. at 41.) This decreased the voltage sent to the brakes. (Id.) When the controller recognized the decreased voltage, it engaged the brakes, causing the elevator to stop in between floors. (Id. at 41-42.) Once Mr. McCray identified the problem, he cleaned the contact, serviced the elevator, and placed it back in use.

In addition to Mr. McCray's inspection, Bayline technician Otho C. Britt also examined the elevator two days after the accident. (Doc. 81-1 at 30.) Mr. Britt's report confirmed that

3

the elevator did fall approximately two feet, but he could not duplicate the malfunction. (Id.) Thus, he could not confirm Mr. McCray's findings. (Id.) He did confirm, however, that Mr. McCray's findings were theoretically consistent with the malfunction experienced. (Id.) The report made no mention of negligence or failure to properly maintain the elevator as a potential cause of the accident. (Id.)

Depositions taken by the parties and Otis maintenance records reveal that Otis technicians performed work on the elevators in the Medical Center almost every day and followed a regular maintenance schedule. (Doc. 81-1; Doc. 90 at 49.) They regularly cleaned the contacts located in the controller and performed numerous brake-performance tests. (Doc. 81-1 at 8-13.) In fact, Mr. McCray had performed a brake-performance test the day before the accident, and he stated in his deposition that his test would have revealed any dirty contacts. (McCray Dep. at 45.) Additionally, the elevator had no previous history of dirty contacts or problems with its brake performance.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" if they could affect the outcome of

the suit under the governing substantive law, and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted). The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Because the standard for summary judgment mirrors that of a directed verdict, the initial burden of proof required by either party depends on who carries the burden of proof at trial. Id. at 323. When the movant does not carry the burden of proof at trial, it may satisfy its initial burden in one of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H.

5

Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). The movant cannot meet its initial burden by merely declaring that the non-moving party cannot meet its burden at trial. Clark, 929 F.2d at 608.

If — and only if — the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presented evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk of the Court gave Plaintiff notice of the motions for summary judgment and informed her of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. nos. 68, 79.) Therefore, the notice requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is now ripe for consideration.

### III. DISCUSSION

#### A. Negligence Claim

"Federal courts sitting in diversity apply state substantive law and federal procedural law." <u>Gasperini v. Center for Humanities, Inc.</u>, 518 U.S. 415, 427 (1996). Georgia substantive law states that "tort cases are governed by the substantive law of the state where the tort or wrong occurred." <u>Bailey v. Cottrell, Inc.</u>, 721 S.E.2d 571, 573 (Ga. Ct. App. 2011). The alleged tort in this case occurred in Georgia, thus Georgia substantive law applies.

Under Georgia law, a negligence action requires the plaintiff to prove that (1) the defendant owed a duty to the plaintiff, (2) the defendant breached that duty, (3) the breach proximately caused the harm alleged, and (4) the plaintiff suffered loss or damage as a result of the breach. <u>Bradley</u>

Center, Inc. v. Wessner, 296 S.E.2d 693, 695 (Ga. 1982). In their motions for summary judgment, both Defendants object to various elements of Plaintiff's negligence claim. The Court will address only Bayline's claim that it owed Plaintiff no duty of care, and both Defendants' claims that they did not breach.

**1. Bayline's Duty**

"Certain duties are inherent in human society," including a duty to conduct oneself as a reasonable person would so as to prevent injury to another person. Sims v. Am. Casualty Co., 206 S.E.2d 121, 127 (Ga. Ct. App. 1974). In general, a duty exists if "in ordinary prudence, [the defendant] might have foreseen that some injury would result from his act or omission, and that consequences of a generally injurious nature might result." Id. Thus, the existence, or non-existence, of a duty depends upon the circumstances surrounding the defendant and his actions. See id.

The circumstances surrounding Bayline — that it contracted to witness and verify the proper execution of important elevator safety tests, the negligent execution of which could seriously endanger the lives of passengers — establishes that it has at least a duty of ordinary care toward elevator passengers. Sims, 206 S.E.2d at 128. Bayline argues that it owed no duty of care because it merely witnessed inspections conducted by Otis and

did not participate in any hands-on maintenance work, (Doc. 67 ("Bayline Mot. Summ. J.") at 5); however, that Bayline had different responsibilities than Otis does not absolve it of potential negligence. It merely alters what constitutes a breach of Bayline's duties. Because Bayline could foresee that negligent oversight of Otis inspections could harm an elevator passenger, it had a duty to exercise ordinary care. Sims, 206 S.E.2d at 127. The real question, therefore, is whether Plaintiff produced sufficient evidence for a reasonable jury to find that either Defendant breached its duty of care.

## 2. Plaintiff's Breach Claim

### i. Georgia Law

Maintenance providers "are [not] insurers of elevator passengers' safety." Brady v. Elevator Specialists, Inc., 653 S.E.2d 59, 64 (Ga. Ct. App. 2007). Because elevators are mechanical devices, they can "become dangerous and cause injury without the negligence of anyone." Id. at 65. Thus, res ipsa loquitur does not apply to elevator accidents. Ellis v. Sears Roebuck & Co., 388 S.E.2d 920, 921 (Ga. Ct. App. 1989). If the evidence demonstrates a regular program of maintenance and repair, the record lacks evidence that the provider knew or should have known of a problem with the elevator, and no evidence indicates that technicians performed the maintenance

negligently, the maintenance provider is not liable for any injury due to mechanical malfunction. <u>Beach v. B.F. Saul Prop. Co.</u>, 694 S.E.2d 147, 155 (Ga. Ct. App. 2010)(Andrews, P.J., dissenting)(citing <u>Brady</u>, 653 S.E.2d 59 and <u>Sparks v. MARTA</u>, 478 S.E.2d 923 (Ga. Ct. App. 1996)).

For Plaintiff to prevail on her negligence claim at trial, she must provide "affirmative proof" of Defendants' negligence. <u>Ellis</u>, 388 S.E.2d at 920. The elevator's malfunction and Plaintiff's subsequent injury, alone, do not establish negligence. <u>Brady</u>, 653 S.E.2d at 64. Plaintiff must prove that Defendants did something wrong — in this case, evidence that Defendants failed to properly maintain the elevator or failed to fix a problem they knew or should have known about. <u>Id.</u> at 64-65.

To prove negligent maintenance, a plaintiff must offer concrete evidence that the defendants did something they should not have, or did not do something they should have. In <u>Brady</u>, John Brady, a wheelchair-bound paraplegic, injured his head when backing out of a crowded elevator that had misleveled by approximately eight inches. 653 S.E.2d at 61. Mr. Brady argued that the maintenance company was negligent because they were aware of 5-7 misleveling incidents at that building in the previous three years. <u>Id.</u> He also supplied an expert who opined that the age of the elevator mandated more frequent and

10

comprehensive inspections than the defendant provided. Id. at 62. Nevertheless, the Georgia Court of Appeals upheld summary judgment for the defendant. It noted that:

> Although elevator six was shown not to have properly leveled twice before within an approximately four-year period, because ESI's inspection program required weekly inspections, along with annual, semi-annual, and quarterly maintenance, elevator six had been inspected or maintained hundreds of times during this period, and <u>the Brady's do not show that the inspections or maintenance actually performed were negligent</u> or that ESI or ACL knew or were put on notice during these procedures that elevator six was defective.

Id. at 64 (emphasis added). The Brady court also commented that while the expert might have thought more frequent maintenance necessary, he "did not point to anything deficient or negligent in the maintenance that [the defendant] did perform." Id.

The evidence offered must also be sufficient for a reasonable jury to declare the defendant negligent. See Sparks, 478 S.E.2d at 925-26. In Sparks, the Plaintiff alleged that the defendants failed to properly maintain an escalator that injured him when it malfunctioned. Id. at 924. The plaintiff pointed to evidence of seven calls concerning problems with the escalator; an employee's deposition testimony that even after an escalator is repaired, he expects it to break; and deposition testimony that the maintenance provider "routinely replace[d] only the broken bearing and not all the bearings, even though replacing the entire bearing assembly or the entire escalator would extend

11

the time between problems." Id. at 925. Nevertheless, the court found insufficient evidence to give rise to a triable issue of fact. Id. It declared that, "although the escalator was expected to malfunction, required repairs, and was sometimes dangerous, these facts do not show that MARTA or Millar was negligent in this case." Id. at 925-26. Additionally, it noted that Plaintiff "presented no evidence showing that the defendants could have detected a possible failure of the bearing through any type of inspection." Id. at 926. The court held the evidence insufficient to find the defendants even slightly negligent. Id.

Providing evidence sufficient to survive summary judgment, however, is far from impossible. See Hill v. Cole CC Kennesaw GA, LLC, 766 S.E.2d 120 (Ga. Ct. App. 2015). Even a single expert opinion might suffice to create a triable issue of fact. See id. at 122. In Hill the plaintiff sued Kone, Inc., an elevator maintenance company, after she tripped on the floor of a misleveled elevator. Id. at 121. The trial court granted summary judgment to Kone, but the appellate court disagreed. Id. It found sufficient to create a factual dispute an affidavit by the plaintiff's expert that Kone technicians serviced the elevators inconsistent with the Kone maintenance manual. Id. The affidavit cited: (1) a Kone technician's deposition denying that certain leveling characteristics should

12

be routinely checked — a direct contradiction with the maintenance manual; (2) problems with Kone's record keeping; and (3) the fact that all of the building elevators had experienced misleveling issues in the past. Id. at 122. The affidavit concluded with the expert's opinion that Kone breached industry standards for maintenance and inspection, and that had it followed those standards, it would have prevented the malfunction. Id. The Hill court's acceptance of a single expert affidavit demonstrates that the burden a plaintiff must bear is not too heavy. She need only provide the court with some competent evidence which could allow for a reasonable inference of negligence.

### ii. Defendants' Arguments

Defendants contend that Plaintiff failed to provide sufficient evidence, or any evidence for that matter, that either party acted negligently. The Court agrees. It will discuss each Defendant's arguments separately.

First, Defendant Otis not only demonstrated Plaintiff's lack of evidence, but it also affirmatively negated Plaintiff's negligence claim. Records and depositions produced by Otis indicate that it undertook a reasonable maintenance and repair program. Otis offered evidence that it conducted no less than twenty-eight tests or inspections on ten separate days in the

13

five months preceding the accident. (See Doc. 81-1, E.) These scheduled preventative-maintenance tests included a brake-performance test on May 6, a brake-maintenance test on March 13, controller maintenance on February 22, and brake maintenance on February 19. (Id. at 1-5.) Otis also performed semiannual inspections as required by the National Elevator Code, and these inspections were witnessed by a Bayline representative who served as an independent third-party observer. (McCray Dep. at 36). Finally, Otis Maintenance records indicate no prior problems with the brake system relays in the previous six months. (See Doc 81-1, E.) Otis's evidence establishes that it maintained a regular maintenance program and lacked knowledge of any problems with the elevator at issue. Thus, under Georgia law, it cannot be liable absent affirmative proof that it negligently performed the maintenance or did indeed know about a problem but failed to fix it.

Second, Defendant Bayline sufficiently established that the record lacked any concrete evidence that it acted negligently in the performance of its responsibilities. The Court has fully reviewed the record, and it cannot find any evidence offered by Plaintiff that Bayline acted negligently. Because both moving parties met their burden, the Court now looks to see if the Plaintiff's reply provided sufficient evidence such that a reasonable jury could find in her favor.

14

### iii. Plaintiff's Response

After reviewing Plaintiff's response, the Court concludes that Plaintiff has not met her burden of proof for either Defendant. She has failed to offer any affirmative evidence that Otis was negligent in its maintenance and repair or that it knew or should have known of a defect with the elevator. Despite ample discovery time, Plaintiff failed to offer any expert evidence opining on the cause of the accident, what could have been done to prevent the accident, or what should have been done to prevent the accident. Furthermore, Plaintiff offers absolutely no evidence demonstrating that Otis technicians were negligent in their duties, that Otis was negligent in the scheme of its maintenance program, or that Otis knew or should have known that this accident might occur.

Plaintiff's best argument is that because Mr. McCray performed a brake-performance test the day before the accident, he must have been negligent for not noticing the dirty relay contact. While this argument might have merit if better developed, Plaintiff offers no evidence as to how Mr. McCray was or could have been negligent in conducting the brake test. Plaintiff offered no expert opinion as to whether Mr. McCray should have identified the dirty contact when conducting the brake test, nor any explanation as to why he should have identified the dirty contact during the brake-performance test.

The Court must draw all "justifiable" inferences in favor of the non-moving party. But, it must not draw all possible inferences in its favor. While it is possible that Mr. McCray failed to notice the dirty contact because he negligently performed the brake-performance test, absent further evidence, presuming negligence based on these facts is not justifiable.

Finally, Plaintiff attempts to avoid her lack of evidence by citing res ipsa loquitur. This legal doctrine, however, does not apply to elevator accidents. Ellis, 388 S.E.2d at 921; Castner v. Otis Elevator Co., No. CV 1:11-CV-03488-AT, 2013 WL 11901562, at *3 ("[T}he doctrine of res ipsa loquitor does not apply in the context of elevators. . . ."); Sparks, 478 S.E.2d at 925-26; Brady, 653 S.E.2d at 64-65.

### B. Plaintiff's Claim for Attorneys' Fees

Plaintiff's complaint stated a demand for attorneys' fees. (Doc. 1, ¶ 5, p. 13.) Defendants, in their motions for summary judgment, argue that Plaintiff has no basis for obtaining attorneys' fees. Plaintiff made no attempt to refute Defendants' argument. The Court agrees with Defendants, and denies Plaintiff's request for attorneys' fees.

## IV. CONCLUSION

Plaintiff's claim can be boiled down to the idea that because something went wrong, someone did wrong. This idea, however, is not something for which Georgia law allows under the facts of this case. For the reasons stated above, the Court finds that the Defendants satisfied their burden as the moving party, and that Plaintiff failed to produce sufficient evidence such that a reasonable jury could find either Defendant negligent. Therefore, the Court **GRANTS** the Defendants' motions for summary judgment (Doc. 66 ("Bayline Mot. Summ. J."); Doc. 74 ("Otis Mot. Summ. J.").) Additionally, because the Court arrived at its decision needing only the briefs filed by the parties, it **DENIES** Defendants' motion for a hearing on summary judgment. (Doc. 80 ("Otis Mot. Hr'g"); Doc. 82 ("Bayline Mot. Hr'g").) The Clerk shall **ENTER JUDGMENT** in favor of Defendants and against Plaintiff and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia this 27th day of September, 2016.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA